163 So. 318

## WOODS v. CHRISSINGER et al.

### 8 Div. 578.

Supreme Court of Alabama.

June 27, 1935.

Rehearing Denied Oct. 10, 1935.

Peach & Caddell, of Decatur; for appellant.

McAfee & Nix and H. A. Entrekin, all of Decatur, for appellees.

BOULDIN, Justice.

The bill is filed to remove the administration of the estate of Mary E. Allison, deceased, from the probate court of Morgan county to the circuit court, in equity, and to enforce special trusts under the will of the decedent, in favor of complainants as beneficiaries.

The appeal is from a decree overruling demurrers to the bill.

By the will of decedent, respondent Joseph A. Woods was named as executor, and residuary legatee.

After making several small, specific bequests, the original will, executed in 1922, in clause 8, makes the following bequest:

"I give, devise, and bequeath, to Joseph A. Woods, in trust, the sum of sixteen thousand five hundred dollars ($16,500.00), in cash, and I direct that he, as such trustee, shall loan said money, and take as security therefor mortgages on real estate not exceeding 60% of the value of such real estate; that he shall annually collect the interest on said loan or loans, and that he shall pay to Josephine V. Sheets, Anna P. Chrissinger and Gertrude B. Smith the said interest so collected in equal proportions for and during the term of their natural lives."

It then provides that upon the death of each of these beneficiaries, her share should become a part of the general estate, and pass under the residuary clause. These beneficiaries, it is alleged, were the three sisters of decedent. Gertrude B. Smith having died while the decedent still lived, codicil No. 3 of the will, executed in 1927, shortly before the death of decedent, substituted E. Roy Sheets as a beneficiary in lieu of Gertrude B. Smith. The bill is filed by the beneficiaries under these clauses of the will.

It is obvious from the will, in connection with circumstances averred in the bill, taken as true on demurrer, that a major purpose was to provide an annuity for these beneficiaries during their natural lives. Codicil No. 1 makes it clear that the purpose was to provide each an annuity of $450. It is averred, the executor, in recognition of such intent, did pay to each of them such sum on the anniversary of the death of decedent in 1928, but in 1929 such payment was refused, and no steps had been taken to make the investments specified. The bill was filed in January, 1930. It is averred the debts of the estate, small in amount, had been paid, that the estate was amply sufficient to set up such trust, and pay such annuities. It is insisted on demurrer that the will contemplates such trust only in the event of cash on hand at the death of decedent, and there was no purpose to charge these annuities on the corpus of the estate.

We cannot concur in this construction. Clause 7 of the original will reads:

"I hereby direct and expressly empower my Executor, hereinafter named, to convert a sufficient amount of my real, personal, and mixed property (or either) to carry into effect each and every provision or item of this will, and to this end I hereby give and grant unto my Executor full power and authority in his name as such Executor, to sell and convey and to execute proper bills of sale or deeds of conveyance to such property as may be disposed of by him to carry out the provisions of this, my will."

And the third item of codicil No. 3 reads:

"I hereby direct and expressly empower my Executor, Joseph A. Woods, to mortgage and borrow money upon any or all of my real, personal and mixed property (or either) to carry into effect each and every item as they appear in order of this my Last Will and Testament, and to this end I hereby give and grant unto my Executor full power and authority in his name as such Executor, to execute mortgages and notes and place liens and encumbrances upon such property as may be necessary to carry out the provisions of this, my Last Will and Testament."

We are convinced it was the purpose to charge the entire estate with this bequest, and to empower the executor to sell and convey or mortgage real estate to provide means to meet these annuities. The direction to invest the $16,500 in first mortgages on real estate at not exceeding 60 per cent. their value was a method selected by the testator to assure continuing resources for such payment.

The court of equity has full power to charge the real estate with this trust, to require the executor to pay the annuities, and, if need be, sell the real estate; or make such other decretal orders as may be necessary to assure payment of such annuities, having regard, as of course, to a preservation of the residuary devise, as far as may be.

There is equity in the bill, and there was no error in overruling the demurrers addressed to the bill as a whole.

■ Dealing with demurrers addressed to certain aspects of the bill, we consider, first, the question of misjoinder of parties respondent.

The will exempted the executor from giving bond, but later, on application of one of these complainants, he was required to give a bond. United States Fidelity & Guaranty Company became surety, and is made a party respondent. This surety does not join in the appeal. It is taken by the executor alone, and no errors are assigned by such surety. It is not perceived nor suggested in argument how this appellant is injured by overruling the demurrer filed by him and the surety severally, raising this point.

■ A demurrant can complain on appeal only of rulings on demurrer harmful to him.

■ But conceding injury to appellant, we find no error in this regard. It is well-known law that the surety of an executor or administrator cannot be sued at law for the devastavit of his principal until the liability of the principal has been adjudicated. The cases are careful to state this rule as applicable to suits at law.

■ In the early case of Moore et al. v. Armstrong et al., 9 Port. 697, it was declared: "An administrator and his sureties may be joined * * * in equity, before a liability has been fixed upon their principal, by suit; and where it becomes necessary to proceed in equity, for the recovery of a debt, legacy, or distributive share, all the obligors in the administration bond, should be made parties."

The question was there fully considered and the authority of that case seems never to have been questioned. It is based on the plenary powers of the court of equity to mold its decrees so as to protect all parties, grant full and complete relief, and avoid a multiplicity of suits. Fretwell et al. v. McLemore et al., 52 Ala. 124, 137, 138; 24 C. J. page 1087.

Certain averments charge further dereliction of the executor and trustee in interfering with the payment of dividends declared on stock in the Decatur Ice & Coal Company, specially bequeathed to complainant, Mrs. Chrissinger; also dividends on $500 placed in trust with the New Morgan County Building & Loan Association, which dividends were to be paid to the Benevolent Society Hospital, for the maintenance of Allison Memorial Room at the hospital.

Because of the several derelictions we have noted, and the antagonistic position of the executor by reason of being the

residuary legatee, his breaches of trust alleged to be in his own interest, saving the estate to himself, a removal of the executor and trustee is sought.

Assignments of demurrer 25, 26, 48, and 49 were addressed especially to this aspect of the bill.

■ This court has not had occasion to definitely pass upon the power of a court of equity to remove an executor of an estate upon other than statutory grounds. Code, § 5789.

In Castleberry v. Hollingsworth, 215 Ala. 445, 111 So. 35, a personal interest conflicting with his obligations as executor was held no sufficient ground for removal.

This was followed by the announcement that Code, § 6476, was not intended to affect substantive law as established by statute and decision. See, also, Gilchrist et al. v. Gilchrist et al., 223 Ala. 562, 137 So. 406.

A distinction is to be drawn between executors charged with the ordinary duties of such office, analogous to those of an administrator, and cases wherein continuing express trusts are created by the will. In the latter event, if the jurisdiction of a court of equity is properly invoked to effectuate the due execution of such trust, we do not question the power of the court of equity to deal with such trustee as in other cases of continuing express trusts. This includes the power to remove the trustee-executor, if need be, in protecting the beneficiaries of the trust.

■ The present bill was filed within a few months after the alleged default in paying an annuity; the estate, so far as alleged, was fully intact. No devastavit of the corpus of the estate is alleged. It does not appear, that on being advised and directed by the court in the execution of the trust, the trustee chosen by the decedent, and interested as a residuary legatee, is incapable or unwilling to faithfully execute the trust. We observe that for four years after the filing of this bill and demurrers thereto no hearing on the demurrer was had. The doings of the trustee meantime do not appear.

Without further comment, we are of opinion the bill as amended presents no ground for removal of the executor-trustee.

The court erred in overruling the demurrers addressed to this aspect of the bill.

For this error, the decree is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.